The final case on the call this morning is Case No. 123038, Midwest Bank v. Cobo, Agenda No. 19. Counsel, you may proceed. Good morning. May it please the Court, my name is Stephen G. Gady, and I represent the appellant, First Midwest Bank, in this matter. With me also representing First Midwest is Julie Ruppel of Indiana Rustanic. Counsel, we're requesting that this Court should overturn the decision of the appellate court which determined that First Midwest Bank's second collection action was an impermissible second refiling of the mortgage foreclosure action pursuant to the Illinois single refiling rule and dismissing plaintiff's action for breach of note. It's the plaintiff's position that the appellate court incorrectly intermingled principles of race judicata and this decision should be overturned for the following reasons. First, a mortgage foreclosure action and a breach of note action arise out of separate and distinct transactions and, as a result, separate operative facts. The appellate court erred in its overbroad reliance on Coleman, which is contrary to settled law in Illinois. In Coleman, there was a final adjudication on the merits, and in this case, there was not. The underlying cases were dismissed without prejudice. Filing a single-count mortgage foreclosure complaint does not seek concurrent relief on the note. And finally, Illinois policy concerns weigh in favor of narrowing the issues rather than expansion of the single refiling rule. Turning to the first point, a mortgage foreclosure action and a breach of note action arise out of separate operative facts. In this case, the Supreme Court should find and determine that the mortgage and note are separate and distinct contracts and transactions, and a mortgage foreclosure and breach of note action arise out of a separate set of operative facts. The mortgage and note are separate contracts, despite the fact that there is an interplay between these two documents. The note is a negotiable interest that evidences the borrower's promise to pay, and a mortgage is security for the note, given by the mortgagor to the mortgagee, which creates a consensual lien on the property of the mortgagor. It's well-settled law in Illinois that the various contracts may comprise a loan transaction or separate contracts, referring to Goldstein, Terzak, and Palmer City, and they're clear on that point. Also, I would like to bring the attention of the Court to a case cited by the amicus in support of our position, Abdul Kareem v. First Federal Savings and Loan, 101 Illinois 2nd, 400, for the proposition that the note and mortgage are separate undertakings and separate contracts, and that's consistent with the holdings in Goldstein, Palmer City, and Terzak. In this case, it involved a mortgage and a note, and the trial court relied on the Goldstein case, which recognized the distinction between a guarantee, a note, and a mortgage under the transactional test. Goldstein concluded that the mere proximity in time between these contracts, as well as the overlap of some parties, does not render them a single transaction for purposes of the transactional test and the Illinois single refiling rule. The purpose of each of these transactions at issue in that case was there was a note, a mortgage, and a guarantee, and the Court determined that those were separate and distinct transactions and it didn't trigger the single refiling rule. Counsel, we've clearly said that we use res judicata analysis to determine if a claim is the same for purposes of the one refiling rule, and in River Park in adopting the transactional test for res judicata, we quoted with approval the language that I'm going to give you from the second restatement of judges, which says, quote, the claim extinguished includes all rights of the plaintiffs to remedies against the defendant with respect to all or any part of the transaction, and I think here's the operative words, or series of connected transactions out of which the action arose. You've even used in your argument when you started an interconnection of transactions. Is that fatal to your argument, that portion of the second restatement? Well, no, I don't believe so, Your Honor, because I think the res judicata analysis doesn't come into play in this particular situation because there was no final adjudication. If there had been a final adjudication in one of these cases, then that might be the case, and that's, I think, the issue that we have with Coleman and the trial court in this case. In our case, there was no final adjudication, and so we don't believe that all of the elements of res judicata were applicable. I think in the case in River City, what the one element that was utilized in reference to that was the identity of the causes of action, and so it was the transactional test that was articulated in River City, and that is one aspect of res judicata, but I think in order to trigger all of the other aspects, which I believe the appellate court attempted to do in this case, you need a final adjudication on the merits. I think the issue here that we would like to bring to the attention of the court is the purpose of each of these contracts. They're separate and distinct transactions, and therefore, as a result of that, we don't believe that the res judicata applies, and we also don't believe that the single refiling rule is applicable in this case. In fact, the Terzak and First American Bank case accepted and applied the reasoning of Goldstein in its analysis of the transactional test and determined that a foreclosure suit applies a legally distinct remedy from an impersonal proceeding on a promissory note, and we urge the court today to follow and confirm the reasoning in Goldstein and Terzak to determine that the mortgage and the note and causes of action that arise from those documents and transactions are separate transactions for purposes of the transactional test and the single refiling rule. There are cases, and Farmer City is one, as well as Goldstein and Terzak, that talk about the fact that causes of action on the note and the mortgage can be pursued separately or concurrently and consecutively. So I would like to also draw the attention of the court to the fact that this was a relatively simple transaction, but in the course of the practical aspects of commercial real estate or residential real estate in Illinois, there may be many different contracts at issue in the case. There may be multiple mortgages on different properties which secure the same indebtedness. And so to expand the rule that the Cobo Court, I believe, has done, it would potentially imperil many of those different transactions. So, again, we're requesting that this court determine that the mortgage transaction and the note transaction and the causes of action that arise therefrom are separate transactions for purposes of the single refiling rule, especially where there is no adjudication on the merits. Additionally, the appellate court's decision in the defendant's argument goes further by expanding the analysis on the single refiling rule to incorporate all of the aspects of race judicata. The defendants argue that the liability under the note could have been determined in the mortgage foreclosure case. And, therefore, the plaintiff's breach of note case, which would be the second case and the second collection case, is a refiling of the mortgage foreclosure action. That principle of law has not been extended, in our view, to the single refiling rule prior to the appellate court's decision in Cobo. The defendants are essentially arguing and urging this court to limit the remedies that a lender is able to pursue under each of these separate contracts. If the court adopts the defendant's position, the result could be that lenders may be restricted to bringing a single action before the court seeking relief under all of its contracts, regardless of their individual rights they're under. Could you just give me a context? Why wouldn't you bring one complaint with both causes of action? Well, I think sometimes it's a business decision. And I think there are occasions when that happens. Also, the case law provides that it can be brought consecutively or concurrently. And I have brought both actions in the same case, one- and two-count complaints, but there's no requirement that that happens. I think it's just a business decision that's made. The ratio to con analysis fails here, as I mentioned before, because these cases were dismissed without prejudice. So the cases that were relied on by Coleman and Cobo were, in essence, ratio to cata cases. And both in the Coleman case, the issue was that the mortgage foreclosure case actually went to judgment, and there was a deficiency judgment that was entered. Subsequently, in Coleman, the lender filed breach of note action against the defendant, Coleman, and the Coleman court found that because of applied ratio to cata principles, there was a final adjudication on the merits. There was a finding of a deficiency. Therefore, the subsequent action was noted on the note required. The defendants asked this court to overrule Farmer State Bank v. Champaign, Terzak v. First American, and the Goldstein case. Although the court uses the transactional test both in the single refiling rule and for ratio to cata, it's clear that that analysis under the ratio to cata doctrine and the single refiling rule are distinct. Again, by definition, ratio to cata cannot apply to cases that fall under the single refiling rule because there's no final judgment on the merits. A breach of note, as the court has pointed out in a number of cases, a breach of note case is an impersonal matter which imposes personal liability or an obligation of one person in favor of another, whereas a mortgage foreclosure case is a quasi-interim matter which affects the interests of particular persons in designated property. And this action requires the mortgagee to foreclose the rights of any individual or entity with an interest in the property and for the subject property to be sold at a judicial sale in order to satisfy the outstanding debt. And you obtained a deficiency in the foreclosure action against the signers of the note? That can be obtained, yes, but I don't think that's dispositive of the issue of whether or not that tracks with the ratio to cata rule or the single refiling rule because there's a number. First of all, the Coleman court in Cobo didn't really address that. They addressed that issue, but they tried to bootstrap the prayer for relief and the request for relief in a mortgage foreclosure case into a concurrent action on the note. And there's no case that supports that position, and I don't think that it's logical from the perspective of what the law is, particularly in light of the fact that there's a long line of cases that say that you can pursue these consecutively, work concurrently, and that they're separate and distinct transactions. Even if it seems like the end result or end remedy comes out being the same, proposing and getting a deficiency judgment? Well, the deficiency judgment arises only after a number of steps in the process. So, in other words, not only do you have to pray for it, and the language in the prayer for relief is a personal judgment if sought. So in regards to that, that is construed as a reservation of the right to pursue a personal deficiency. So, in other words, you're not getting it at that point in time. You have to go through the process of the foreclosure. You have to get a judgment. It has to go to judicial sale. It has to be confirmed. And only then, and if certain aspects of it, if authorized, for example, services process was personally obtained, the borrower didn't file bankruptcy, or a few other processes, only then can a deficiency judgment be entered. And the distinction is that deficiency judgment is different than judgment on the whole in the sense that one is a determination of the obligations of the individuals, and the other one is a result of the foreclosure action. I'd like to turn to my second point and the concept of the appellate court where COGO misconstrued Coleman. The appellate court erred in its overbroad application of Coleman. We believe that the COGO court centered its analysis on Coleman and COGO applied the holding incorrectly. In so doing, the COGO court expanded the singular filing rule beyond its reasonable limits. The Coleman case dealt with fully adjudicated foreclosure. Plaintiff filed the action, the court entered judgment, judicial sale was held, the judicial sale was confirmed, and at the confirmation hearing, the court entered an in-rem judgment against the defendants. Personal deficiency was not entered in the Coleman case. After the completion of the foreclosure in Coleman, plaintiff filed a separate action on the note. The Coleman court found that the subsequent suit on the note was barred by the doctrine of race judicata. Essentially, the court, following Coleman,  proceeded to pursue a personal deficiency judgment in the foreclosure but did not. The Coleman court found that when a foreclosure complaint pleads a judgment, requests a judgment for a deficiency, if sought, it's concurrently action on the note. And again, there's no basis in the law for that finding or the exclusion in law. That doesn't square with the long-settled precedent. In our case, the COGO case, again, it's essentially different in that there was no final adjudication at any point in time of any of the issues in the case. The COGO court applied Coleman's holding to a case where there was no final adjudication. And in so doing, it applied race judicata principles to the single refiling rule. The court should not have relied on this reasoning in Coleman because Coleman is factually distinguishable because there was a judgment. In our case, there was no judgment. The Coleman court, again, referred to the fact that the personal deficiency, if sought, was a prayer for relief in the complaint. And again, in the mortgage foreclosure setting, there is a statutory form of complaint, and that's one of the statutory requests for relief that's provided by statute. It can certainly be amended to a certain extent and maybe not pled, but I believe that if you don't file a statutory complaint in the form, you run the risk of, and you do that at your peril. And, for example, in this case, if you were to eliminate that particular section, there is certainly the concept that you may not get the personal deficiency if you were so entitled to it. Applying the COGO expansion of the single refiling rule, the mortgagee would be barred from seeking a subsequent judgment under the note if the borrower were to reappear, be found in Illinois, or if they filed bankruptcy, would be found to be non-dischargeable. But this is contrary to the bargain for contracts between the parties. Remember, these are consensual documents. The parties agreed to note the mortgage in a Goldstein guarantee. And in a commercial transaction, they may agree to other documents like an assignment of rents. It might be other mortgages. And so the ruling in COGO, I believe, could be construed to limit those remedies by a finding that they were all wrapped up in the original mortgage closure case, and a finding that one of those cases might conceivably bar further actions based on the doctrine of race-genitalia. Turning to my third point, the filing of a single mortgage foreclosure case does not seek concurrent relief under the note. Case law is clear that a mortgagee can pursue relief under its mortgage or note consecutively or concurrently. Farmer City State Bank, and more recently, Terzak, are clear. In Terzak, there was an action under the note, and the lender obtained a judgment under the note. They were a junior mortgagee. The borrowers, there was a mortgage foreclosure case that was an attempt at a workout, short sale, and the borrowers then, or the lender, requested some additional funds to release their second lien. The borrowers then filed a Consumer Fraud Act claim, and the court in that case held that it was a separate set of operative facts, and the subsequent, their action had dismissed the Consumer Fraud Act claim based on that. I would also like to discuss very briefly the policy concerns that weigh in favor of not expanding the ruling and overturning the decision in Cobo. The lenders and borrowers bargain for the ability of the lender or the mortgagee to engage in multiple contracts with multiple obligations and remedies in order to make itself whole in the event of a breach. So the purpose of all these documents is so that a lender can recover its funds and recover the balance due on the note. Allowing a lender to pursue a mortgage foreclosure action and then a breach of note is in line with the contracts that the parties had voluntarily entered into, and just as including and permitting an action on a guarantee. The court also needs to consider the wider implications, which I touched on. If the Cobo court is upheld, then I do believe that there is a very substantial likelihood that that would be used to eliminate some of the remedies that are available to the parties to the contract in multiple transactions, multiple document transactions. And finally, there is a policy in Illinois that encourages workouts and forbearance agreements and modifications, and that would also be chilled, I believe, by virtue of the fact that the expansion of the ruling in Cobo to all matters that might have been raised in that context. And so by virtue of that, a lender, I believe, would be reluctant to dismiss or based on a modification or other workout and then find that maybe the workout didn't pay out or the borrower didn't conform to the workout or the modification and they had to file a new mortgage reclosure case. That being said, I notice my time is expiring. For the reasons stated in our briefs and during this argument, First Midwest Bank respectfully requests that this court reverse the order of the appellate court and reinstate the order of the trial court granting summary judgment in favor of the plaintiff and providing any further relief if this court deems just. First Midwest specifically requests that this court determine that mortgages and notes are separate and distinct transactions and foreclosures and actions on the note do not arise from the same group of effects for purposes of the single refiling rule. Thank you very much. Thank you. Counsel. Good morning, Your Honors. May it please the court. Counsel, my name is Arthur Chaya and I represent the defendants Apeliz, Andres Cobo, and Amy Rule in this appeal. At issue in this case is whether a foreclosure case and an action on a promissory note constitute the same cause of action for the purposes of the single refiling rule. In order to answer that question, we are guided by a res judicata analysis. In River Park, this court held that separate claims are considered the same cause of action for the purposes of res judicata if they arise from a single group of operative facts. That's exactly what we have here. How do you address opposing counsel's argument that res judicata doesn't apply because there wasn't a final adjudication? It's a very good question, Your Honor. This court addressed, I shouldn't say it that way, but that's what happened in Flesner. The one refiling rule is a sort of subset of the doctrine of res judicata. In most cases involving the one refiling rule, you will not have a final order present. The plaintiff will have voluntarily dismissed its case once, refiled it, and voluntarily dismissed its case again. That's what happened in the Flesner case. There is not a requirement for a final order in order for the one refiling rule to come into play. The issue as I see it are the facts of the case. If the same facts give rise to several different kinds of relief, they constitute a single cause of action for the purposes of the rule. And if we look at the facts of this case, they are neither complicated nor are they in dispute. Each and every lawsuit, including the foreclosure case, was predicated upon a breach of the promissory note. In fact, the same July 1, 2011 breach of the promissory note, the same note was attached as an exhibit to each and every complaint. The same principal balance was sought in each and every complaint. That is the full amount due under the note. And in each case, the court could have entered a judgment against the defendants in the amount that was due under the note. Now in the foreclosure case, they would have been able to have first sold the property, and that would have paid down the balance too. But if there was anything left over, whether the property sold for a dollar or for $100,000, they could have gotten a money judgment enforceable, just like any other money judgment in that foreclosure case. And all the prerequisites for entry of a deficiency judgment were met in the foreclosure case. The complaint asked for that relief. The appellate court noted that in its opinion. The defendants were served, and they appeared through counsel. I was the attorney who represented them in the foreclosure case. And the defendants were liable for the debt. In other words, their liability had not been discharged in bankruptcy. So had that foreclosure case proceeded, a money judgment could have been entered against the defendants in that case. And I really like how the appellate court described what was going on in the foreclosure case. The appellate court stated that a single-count complaint requesting foreclosure of a mortgage, as well as a personal judgment for a deficiency, involves operative facts from both the mortgage and the promissory note. And that is precisely the point. The foreclosure case here arose from quite literally the same operative facts as the subsequent actions on the note. They all allege the same default date, the same principal balance, and ultimately could have accomplished the same thing, a money judgment against the defendants. If we agree with you, do we have to overturn Terzak and Goldstein? I don't believe so, Your Honor, because what's different about Terzak, Goldstein involved the guarantee, which is simply not an issue in this case. What's also an interesting point about Goldstein is the guarantors specifically waived this argument. I know the opinion doesn't make a big deal about that, but that's what actually happened. And the court, and again, I don't want to go through the whole record in that case, but the court described the first case in that case, in Goldstein, the foreclosure case, as strictly an in-rem proceeding that did not encompass the guarantee. I'm not sure if they did maintain service on the guarantors in that case. Now, Terzak relied heavily on the case that counsel cited, which is the Farmer City State Bank case. I don't believe you have to overturn that case. And if you just look at it from this perspective, when you file an action on the note, the only instrument that's at issue is the note. And that's what happened in Terzak and Farmer City. The first case was an action on the promissory note. But if you file an action on a foreclosure, particularly where the predicate breach is a breach of the promissory note, you're putting both instruments at play. And I think that's even more true when you request a deficiency and the trial court is authorized to provide a deficiency judgment in the foreclosure case. So as the appellate court said, you're putting both instruments at issue. That wasn't the case in Terzak or in Farmer City. I think those are distinguishable on that basis as well. And Goldstein, like I said, involved a guarantee, which is simply not the case here. So one other point that I would like to make is in case number two, which plaintiff describes as the first case on the promissory note, we were at trial on that case. The plaintiff had every opportunity to have both of its lawsuits heard on the merits. The foreclosure case was defended. The plaintiff dismissed it. The second case on the promissory note, we were at trial. The defendants had spent weeks preparing for that trial. They had their witnesses, their exhibits. We were ready to go. It was only when Judge Snyder informed the plaintiff that their theory of the case wasn't going to be as easy as they thought that they took a second voluntary dismissal. On that day, the defendants thought that this case was over, as did I. We thought that was it. They were electing to voluntarily dismiss their case. We had no objection. But then three months later, this case came. The plaintiff had every right to file and dismiss its foreclosure case, and it had every right to file and dismiss its second lawsuit. What it did not have the right to do was file this lawsuit, the third in number, and second refiling of a lawsuit that quite literally arose from the same group of operative facts. You know, if the plaintiff's arguments here carry the day, there could be a potential for 479 lawsuits filed without violating the single refiling rule. That's two actions for foreclosure filed and dismissed, two actions for the promissory note filed and dismissed. That's four actions, 12 months for 10 years. Of course, they would have to litigate the actual last case to conclusion, but we're talking about 479 lawsuits without violating the single refiling rule. The single refiling rule has two fantastic purposes. The first is to preserve litigants who are diligent and, for whatever reason, need to take a voluntary dismissal of their case. It preserves their right to bring that case, but it also has public policy concerns to protect defendants from the multiplicity and harassment of continued filings and dismissals of lawsuits. Your opponent has argued that your position would negatively impact loan modification agreements that occur. What's your response to that? Your Honor, I think, in fact, it would be the opposite. If a lender is in a situation where it's taken two voluntary dismissals, if I'm a lender, the first thing I'm going to do is I'm going to try to work with that homeowner to get them into a modification that both parties can agree to, because if they do that, they've now reset the score, if you will. If they enter into a loan modification, we now have new operative facts. So if I'm a lender and I find myself in this predicament, which is not at all common, but if you do find yourself in this predicament, I think it encourages the party to work out an agreement so that the homeowner can save his home and so that the lender can avoid the potential bar that they put themselves into. I have nothing further to add, Your Honors. I believe the appellate court correctly decided this case. Unless the court has any questions, I'm asking that this court affirm the unanimous decision of the First District Appellate Court. Thank you, Counsel. Thank you, Your Honors.  Reply. Briefly, Your Honor. First of all, Flessner was not a mortgage closure case. It wasn't a note case. It was a leasing case, and it was refiled in several different jurisdictions. And the court, I believe, applied the single refiling rule, although the MECUS has asked that that be overturned. In reference to the last case about the workouts and the issue, I think the point that I was trying to make was that if you apply the Cobo decision, which frames itself in res judicata, the mortgage, generally speaking, also includes language that talks about and adopts renewals, modifications, extensions, generally speaking, in all loan documents. So if you take the logic that the defendants are asserting here, and also the ruling in the appellate court, it stands to reason that a case can be made going forward down the road that the res judicata principles apply to those cases that could have been brought. Now, certainly if there was a modification subsequent, that would not occur. But my concern, or the concern that I've raised, is that you have in a commercial transaction, you may have multiple contracts. You may have multiple properties that are secured by one indebtedness. And if you have an adjudication, or maybe not an adjudication in the first one, does that bar the remaining actions or compromise the adjudication of those contracts? And that's the point. I believe that counsel did in their brief request that Terzak and Goldstein and Farm City be overturned. But I think to that extent, I believe that that's one of the things that is concerning because it would significantly expand the res judicata rule in this case, and throughout the state. Thank you very much. And, again, we would request that the appellate court's determination be overturned and the request that we'll leave it at that for now. Thank you. Case number 123038, Midwest Bank v. Cobo, will be taken under advisement as agenda number 19. Mr. Dadey, Mr. Kaya, thank you for your arguments. You are excused.